478 So.2d 812 (1985)
THE FLORIDA BAR, Complainant,
v.
William Hugh PRICE, Respondent.
No. 65069.
Supreme Court of Florida.
November 14, 1985.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel, Orlando, for complainant.
Jack T. Edmund, Bartow, for respondent.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against respondent, William Hugh Price, a member of The Florida Bar, is before us on complaint of The Florida Bar and report of the referee. Respondent has filed a petition for review. We have jurisdiction pursuant to Florida Bar Integration Rules, article XI, Rule 11.09.
Respondent was charged by the state in 1980 with trafficking in cannabis in excess of one hundred pounds, a first-degree felony. His first two trials resulted in mistrials with the juries unable to reach a verdict. On the third retrial the jury acquitted him. At the hearing before the referee in this disciplinary proceeding, most of the evidence was from the trial records and pretrial depositions. The only live testimony was that of respondent.
The referee made the following factual findings in relevant part, and recommendations regarding guilt:
1. Acting upon a series of anonymous tips which ultimately specifically identified respondent by name and description, including aircraft identification number and destination, U.S. Customs agents intercepted an aircraft piloted by respondent and loaded with approximately 571 pounds of marijuana. The interception took place at the Sebring Airport, the flight having originated, in Jamaica.
2. At the Sebring Airport, Customs agents observed respondent's airplane land. It was approached by a white van driven by one James Devlin. The Customs agents observed Devlin get out of *813 the van, go to the side of the airplane, open up a door and then come around to greet and shake hands with the respondent. Devlin then went to the back door of the white van. Shortly thereafter both respondent and Devlin were arrested... .
3. Respondent's testimony at trial, and in this disciplinary proceeding, that he was himself a victim of some unknown "sinister force," and that he participated in the importation scheme only after being threatened with harm to himself and to his wife and children by three unknown Jamaicans, is unworthy of belief and is specifically rejected... .
4... . I find that William Hugh Price ... [was] actively engaged in and participated in a conspiracy to import marijuana into the United States and to offload it at the Sebring Airport.
5. Having rejected respondent's testimony at trial and during this proceeding, I further find that respondent has committed the additional crime(s) of perjury, a factor to be considered in my recommendations.
RECOMMENDATIONS REGARDING GUILT
I recommend that the respondent be found guilty and specifically that he be found guilty of violating Article XI, Rule 11.02(3)(a), of The Florida Bar's Integration Rule for conduct contrary to honesty, justice and good morals. Further, that respondent be found guilty of violating the following Disciplinary Rules of The Florida Bar's Code of Professional Responsibility: 1-102(a)(3) for engaging in illegal conduct involving moral turpitude, 1-102(A)(4) for engaging in dishonest conduct, and 1-102(A)(6) for engaging in other misconduct that reflects adversely on his fitness to practice law.
Regarding punishment, the referee recommended that respondent be disbarred due to the perjury, as well as the extreme seriousness of the offense. The Bar conceded at oral argument that the finding of guilt of perjury was invalid, as due process would require notice on this issue.
Respondent objects to the referee finding him guilty without more live testimony. Respondent cannot complain here now however, as counsel stipulated to using the transcripts and depositions in lieu of live testimony.
Respondent claims that the referee erroneously rejected the jury's findings. In so arguing, he fails to appreciate the differences in the standards of proof in criminal cases and Bar proceedings and the different goals pursued. Florida Bar Integration Rule, article XI, Rule 11.04(2)(c) provides: "The acquittal of an accused in a criminal proceeding shall not necessarily be a bar to disciplinary proceedings... ."
The rule is justified by the different standard of proof of guilt in the two proceedings, and by the different goals of the two proceedings. In a criminal proceeding, guilt must be proved beyond a reasonable doubt; the standard in bar proceedings is clear and convincing evidence. The Florida Bar v. Hirsch, 359 So.2d 856 (Fla. 1978); The Florida Bar v. Quick, 279 So.2d 4 (Fla. 1973). Moreover, even though bar disciplinary proceedings share the same goals as criminal proceedings (punishment, deterrence, protection of society), they do so in the context of enforcing the higher standard of duty and conduct required of those who exercise the privilege of practicing law. See Fla.Bar Integr.Rule, art. XI, Rule 11.02. The finding of not guilty of the charged felony ... does not necessarily indicate that respondent did not violate the more stringent Code of Professional Responsibility.
The Florida Bar v. Musleh, 453 So.2d 794, 796 (Fla. 1984).
We accept the referee's factual findings except regarding commission of perjury, for due process reasons. Respondent never denied flying the marijuana into the United States. He asserted that he was coerced into doing it, but the referee rejected his testimony. A referee's finding of fact is presumed to be correct and will *814 be upheld unless clearly erroneous or lacking in evidentiary support. The Florida Bar v. Hecker, 475 So.2d 1240 (Fla. 1985); The Florida Bar v. Baron, 392 So.2d 1318 (Fla. 1981); The Florida Bar v. McCain, 361 So.2d 700 (Fla. 1978). We agree that respondent's conduct violated the enumerated provisions of the Florida Bar Code of Professional Responsibility and Integration Rule. We likewise impose the referee's recommended punishment of disbarment, despite its being based in part on the perjury. As this Court is not bound by a referee's recommendations for discipline, The Florida Bar v. Weaver, 356 So.2d 797 (Fla. 1978), a specific recommendation may be approved if appropriate although based in part on an invalid finding. Respondent's reprehensible acts are completely inconsistent with the high professional standards expected, indeed required, of members of The Florida Bar.
Respondent's disbarment is effective immediately. Costs in the amount of $846.75 are assessed against respondent, for which sum let execution issue.
It is so ordered.
ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion.
BOYD, Chief Justice, concurring in part and dissenting in part.
Based on all the facts and circumstances of this case as set forth in the opinion of the Court, I concur in the finding that respondent is guilty of serious misconduct but dissent as to the imposition of disbarment. I note that when this case was before the referee The Florida Bar through counsel sought only a term of suspension for respondent. The referee's primary reason for imposing a harsher punishment was his conclusion that respondent had committed perjury, an offense not charged in the complaint.
The referee's findings were based on a reading of the transcript of testimony presented at respondent's criminal trial. The only live testimony presented at the discipline proceeding before the referee was given on behalf of the respondent. Although it was proper under the circumstances for the referee to review and consider the transcript, the fact that his findings are supported only by material from a cold record rather than live testimony is a factor to be weighed when considering the ultimate sanction of disbarment.
Although the fact that respondent was acquitted by the jury at his criminal trial is not determinative of the factual question of whether there was misconduct, the acquittal should be given weighty consideration when the issue is whether to disbar.
Based on the foregoing considerations, I would impose a term of suspension for five years and payment of costs, with the suspension being retroactive to the date upon which, as the record shows, respondent voluntarily discontinued the active practice of law.