644 So.2d 1355 (1994)
THE FLORIDA BAR, Complainant,
v.
Yvonne E. REED, Respondent.
No. 79766.
Supreme Court of Florida.
October 6, 1994.
Rehearing Denied November 22, 1994.
*1356 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Kevin P. Tynan, Bar Counsel, Fort Lauderdale, for complainant.
Louis M. Jepeway, Jr. of Jepeway and Jepeway, P.A., Miami, for respondent.
PER CURIAM.
Yvonne E. Reed, a member of The Florida Bar, petitions this Court for review of a referee's report recommending she be suspended from the practice of law for two years.[1] We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
Reed's misconduct arose from her involvement in a real estate transaction that went bad. In August of 1990, Michael and Kathie Heller were selling their home in Lighthouse Point, Florida. Dimetrio Garcia and Carol Sullivan wanted to purchase the Hellers' home. Ultimately, Garcia, Sullivan and the Hellers reached an agreement under which Garcia and Sullivan agreed to pay $290,000 in cash for the Hellers' home. Reed acted as both realtor and attorney for Garcia and Sullivan.
On August 30, 1990, the Hellers executed a warranty deed and all other documents necessary to perfect the sale of their home. Reed prepared all closing documents, including a warranty deed executed by the Hellers to conclude the sale of the property. On August 31, 1990, Sullivan and Garcia informed Reed that they were having difficulties in securing the cash necessary to close on the transaction. Sullivan and Garcia communicated to Reed that they had only $90,000 to bring to closing. However, they further represented to Reed that they would have the balance of the cash within a few days.
Notwithstanding Garcia's and Sullivan's failure to secure all $290,000 for the closing, the Hellers demanded to close by August 31, 1990. In response to that demand, Reed restructured the parties' agreement such that Garcia and Sullivan would pay $90,000 at closing and take the property subject to two mortgages which were to be satisfied within thirty days of closing. Pursuant to the restructured agreement, the closing proceeded and Sullivan took title to the property.[2]
On August 31, 1990, Reed instructed Sullivan to execute a quit claim deed in which the space for designating the grantee was left blank. On September 25, 1990, Reed was advised that the cashier's check received from Garcia was in fact a $90.00 cashiers check which had been altered. The relevant bank made a claim for return of the $90,000. Reed immediately began to liquidate assets to assure that the bank's threatened action against her trust account would not affect other clients' monies held in trust. Reed stopped writing checks against the $90,000 until the bank informed her that the problem was resolved and funds were available.
On October 25, 1990, Reed inserted her name as grantee on the quit claim deed and took title to the property without tendering any consideration for the property. On October 31, 1990, Reed had Garcia and Sullivan served with a notice of eviction. Sullivan and Garcia left the property. Shortly thereafter, Reed marketed the property for resale and leased the property while it was on the market. In November of 1990, with the knowledge that the actual ownership of the $90,000 was in dispute, Reed began to write checks against the $90,000. Reed made mortgage payments from the $90,000 in order to avoid foreclosure on the property. Further, Reed *1357 expended additional portions of the $90,000 in order to conserve the property. In January of 1991, Reed sold the property to Roseanna Martino for $265,000, and both outstanding mortgages on the property were satisfied.
The Hellers filed a complaint against Reed with The Florida Bar, alleging that Reed had engaged in certain unethical acts during the sale of their home to Garcia and Sullivan. The Bar investigated Reed. Ultimately, the Bar filed a four-count complaint against Reed. In count I, the Bar alleged that Reed violated various enumerated ethical rules based on her handling of the $90,000 cashier's check.[3] In count III, the Bar alleged that Reed violated various enumerated ethical rules based on her dual representation in the Heller to Sullivan and Garcia transaction. Finally, in count IV, the Bar alleged that Reed violated various enumerated ethical rules based on conflict born of Reed's attempt to perform multiple roles  Sullivan's and Garcia's realtor; Sullivan and Garcia's attorney; the Hellers' attorney to a limited extent; closing agent; escrow agent; property owner; and landlord. The referee found Reed guilty on counts I, III, and IV.[4]
The referee recommended as an appropriate discipline that Reed be suspended from the practice of law for a period of two years and that costs be taxed against her. A referee's recommendation for discipline is persuasive. However, it is ultimately our task to determine the appropriate sanction. See The Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla. 1989). Reed contends that the recommended discipline is too harsh.[5] We agree.
Upon review of the record, we are firmly convinced that Reed is guilty of the conduct alleged in counts I, III, and IV, as well as the exercise of extremely poor judgment. Reed should not have undertaken to serve more than one party to the same transaction. That decision seems to be the genesis *1358 of many of the problems which emerged as the transaction began to unravel. However, there is nothing in the record to suggest that Reed intentionally violated ethical rules in order to enrich herself. To the contrary, the Bar concedes that after all expenses, Reed made no more than $5,904.58. This amount obviously does not reflect the time Reed devoted to this matter. Moreover, as the referee noted, Reed "took the only rational path that would conserve the property and would reduce the exposure of all parties[,]" and her "actions ensured that the least harm would come to the most people from a situation ... which she was neither responsible for, nor did she promote." While we do not countenance Reed's ethical violations, we cannot say that her conduct warrants a two-year suspension. In The Florida Bar v. Lord, 433 So.2d 983 (Fla. 1983), we enumerated the three purposes of disciplining unethical conduct by a member of The Florida Bar:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.

Id. at 986. We conclude that the purposes of disciplining Reed would be fulfilled by a six-month suspension.
Accordingly, Yvonne E. Reed is hereby suspended from the practice of law for a period of six months. Reed is suspended effective thirty days from the date of this opinion to allow her time to wind up her practice and attend to the protection of her clients' interests. She shall provide her clients with notice of her suspension, as required by rule 3-5.1(g) of the Rules Regulating The Florida Bar. Further, she shall accept no new business from the date this opinion issues. Judgment for costs of this proceeding is hereby entered against Yvonne E. Reed in the amount of $2,728.18, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
WELLS, J., recused.
NOTES
[1] Reed challenges the propriety of the referee's recommendation for discipline, not the referee's findings of guilt.
[2] Even though Garcia supplied the $90,000, he was not named in the warranty deed.
[3] Because Reed was found not guilty on count II, we need not be distracted by the allegations contained in count II.
[4] As to count I, the referee concluded that:

By reason of the misuse of trust account monies, the Respondent has technically violated Rules 3-4.2 [Violation of the Rules of Professional Conduct is cause for discipline.] and 3-43 [The commission of any act contrary to honesty and justice may be cause for discipline.] of the Rules of Discipline; Rules 4-1.15(a) [A lawyer shall hold in trust, funds belonging to clients or third parties.], 4-1.15(c) [When a lawyer is in possession of disputed funds, those funds must be held in trust], 4-1.15(d) [An attorney shall comply with the Rules Regulating Trust Accounts.], 4-8.4(a) [A lawyer shall not violate the Rules of Professional Conduct.] of the Rules of Professional Conduct and Rule 5-1.1 [Money entrusted for a specific purpose must only be used for that specific purpose.] of the Rules Regulating Trust Accounts. However Respondent took the only rational path that would conserve the property and would reduce the exposure of all parties. Respondent's actions ensured that the least harm would come to the most people from a situation for which she was neither responsible for, nor did she promote.
As to count III, the referee concluded that:
By reason of the conflict of interest caused by the aforesaid dual representation, the Respondent has violated Rules 3-4.2 [Violation of the Rules of Professional Conduct is cause for discipline.] and 3-4.3 [The commission of any act contrary to honesty and justice may be cause for discipline.] of the Rules of Discipline and Rules 4-1.7(a) [A lawyer shall not represent a client if the representation will be directly adverse to the interests of another client.], 4-1.16(a) [A lawyer shall withdraw from representation if the representation will result in violation of the Rules of Professional Conduct.] and 4-8.4(a) [A lawyer shall not violate the Rules of Professional Conduct.] of the Rules of Professional Conduct. Although disclosures were made, the prudent lawyer should have mentioned the potential adverse consequences and its implications.
As to count IV, the referee concluded that:
Based upon the conflict of interest, caused by the Respondent's interests being adverse to her clients, the Respondent has violated Rules 3-4.2 [Violation of the Rules of Professional Conduct is cause for Discipline.] and 3-4.3 [The commission of any act contrary to honesty and justice may be cause for discipline.] of the Rules of Discipline and Rules 4-1.7(b) [A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment may be materially limited by the lawyer's own interests.], 4-1.8(a) [A lawyer shall not enter into a business transaction with a client or secure an ownership interest adverse to the client unless certain enumerated steps are taken.] and 4-8.4(a) [A lawyer shall not violate the Rules of Professional Conduct.] of the Rules of Professional Conduct.
[5] Reed challenges the two-year suspension, not the costs taxed against her.